United States District Court
Middle District
Of
Florida
Orlando Division


Mariam Malone Colette Martinez

           Plaintiff,                  Case No.6:09- cv- 802 –Orl-22 GJK

           v.


City of Orlando
Orlando Police Department
Officer Hall, Yong C. (161   )
Officer Arriage (       )
Ashtin Leasing Inc., Ashley Horen Underwood, d/b/a Ace Metro Cab Company d/b/a
Quick Cab Company
Ace Cab Company Dispatcher/Supervisor on the night (29 Aug 2008)
Bruisset Prevalon

           Defendants.


<u>Motion to Enter Into Evidence</u>

1). Orange County I.C.J.I.S Arrest affidavit Docu. # 122771, 1st and 2nd page.

2). Notice of Release and Dismissal of Charges.

3). American Express, (Pre-Paid Cards), Gift Cards.
   a). # 3790 145349 57588 1844
   b). # 3790 145349 57505 8445

4). American Express (Pre- Paid Card), Gift Card Statements, for the aforementioned cards.

5). Bank statement showing the 29 Aug 2008, legal "Western Union" transfer of legal funds for grocers. [ monies that could have been used, for the payment of the taxi cab fare in the a.m. ], however, not allowed – and statement showing the factual pick up date of 12 Sept 2009

6). Copies of my Pay check stubs prior to 28 Abu 2008 and 2 wks pay thereafter.

7). The Orlando Police Department statement written by the person claiming to be Bruisset Prevalon and Officer Hall yong C.

8). A copy of the "Eagle International " Code of Ethics for Security Officers.

9). A photo copy of the Plaintiff " State of Florida" Security License.

10). A copy of the payment of $20.35 given to Ace Cab Co., Ashtin Leasing  –  Attorney Mr. J. W Day, Via State of Florida and State of Virigina,  P.O. Box 3469 – Orlando, Fl. 32802.

11). A billing from Orlando Regional Medical Health Center, d/b/a Orlando Health for services of clarification as per requested by my then Attorney Mr. J. W. Day.  As per his request of theraphy for the Plaintiff and request for payment via U. S. Postage.

12). Correspondence to Ashley Horen Underwood, Owner of Ashtin Leasing Inc. and Owner of Ace Cab Co. d/b/a quick Cab. With U.S. Postage w/ envelop.

13). Correspondence forms Carey A Bos. / Bos A. Carey, Attorney for the Underwood Family.

14). Correspondence form J. W. Day Esq. to Mr. Carey A. Bos Attorney.

15). Correspondence to V. Demings, Chief of Police Orlando Police Department, Orlando, Fl.., State of Florida, USA.

16). Correspondence to City of Orlando: Claims, Adjustor Zito, and Karen.

17). Correspondence from the City of Orlando's Records Unit Records Unit.  In re of Files and envelopes.

18). Correspondence to the Custodian of Records form Mr. Day Esq. via U.S Postage w/ envelopes.

19). State of Florida Chapter 493

20). the American Express Gift Card Cardholder Agreement.

21). Money Orders showing payments for:
Child Support
Savings
Student Loan Payments
Storage Payment's

22). U.S. States Attorneys office Citizen Complaint Intake form

23). Invoice/Billing statement for Storage Unit in Plaintiff home of Record.

24). Tenant Ledger History

25). Various Correspondence w/ The State of Florida and the State of Il..
                                    a). Complaint to the State of Florida
                                    b). Complaint to the State of Illinios
                                    c). Replies

26). Various Correspondence with The State of Illinois.

27). Plaintiffs Personal Resume.

*1.*

O461

## Orange County                ICJIS Arrest Affidavit

| | |
|---|---|
| Arrested ☑   At- Large ☐   JRA ☐ | Document #:   122771 | Division #: |
| Document Date:   8/29/2008 | | Court Case #: |

| Location of Defendant Vehicle: | NONE | Date-Time Booked: | 08/29/2008 23:36 | Agency Case Number: | 2008-373307 |
|---|---|---|---|---|---|

| ORI: | FL0480400 | Agency Name: | ORLANDO POLICE DEPT | FCIC/NCIC Check: ☑ | Date-Time of Arrest: | 08/29/2008 22:05 |
|---|---|---|---|---|---|---|

| Address of Arrest: | 3707 CONROY RD |
|---|---|

| DEFENDANT | Adult ☑ | Juvenile ☐ | Name Key: | Jacket Number: | Inmate Number: 08042340 | Language: ENGLISH |
|---|---|---|---|---|---|---|

| NAME (L.F.M): | MARTINEZ, MARIAM M | | A.K.A: | | Race: B | Sex: F | DOB: 1/28/1967 | Age: 40 |
|---|---|---|---|---|---|---|---|---|

| Height: 5'02" | Weight: 125 | Hair: BLK | Eyes: BRO | POB City: CHICAGO | POB State: IL | POB Country: UNITED STATES |
|---|---|---|---|---|---|---|

| RES Street #: | 107 HILLCREST AV | | | | Citizenship: UNITED STATES |
|---|---|---|---|---|---|

| City: ORLANDO | | State: FL | Zip: 32801 | Home Phone: | Other Phone: |
|---|---|---|---|---|---|

| Scars/Tattoos: | | | Ethnicity: HISPANIC OR LATINO |
|---|---|---|---|

| Driver's License/ State ID No: | M635-553-67-928-0 | State: FL | Year Expires: | SSN #: 360549954 |
|---|---|---|---|---|

| Next of Kin Name: | Address: | Phone: |
|---|---|---|

| Business and Occupation: |
|---|

| Bus Street #: |
|---|

| City: | State: | Zip: | Bus Phone: |
|---|---|---|---|

| AGGRAVATORS: | Firearm ☐  Weapon ☐  Mask ☐  Vest ☐ | Convicted Sex Batterer ☐ | Hate Crime ☐ | Special Victim: | Domestic Violence? N |
|---|---|---|---|---|---|

| OFFENSES | Felony ☐   Misd. ☑   ORD. ☐   Traffic ☐ | Court Location: | COUNTY#1 |
|---|---|---|---|

| # | GOC Code | Description | Bond Amt. $ | FSS/ORD | FDLE Ref# | Drug Name | Citation Number |
|---|---|---|---|---|---|---|---|
| 1 | | LARC PETIT 1ST OFF    812.014(3)(A) | 100.00 | 812.014 | 2798 | | |
| 2 | | RESIST OFFICER INTERFERE W LEO WO VIOLENCE   893.09(4)-4 | 500.00 | 893.09 | 5051 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

CHECK HERE IF OFFENSES ARE CONTINUED   ☐

| CODEFENDANT | #1 | NAME (L,F,M): | | Arr? Juv. Fel Misd. ORD Traff. NTA | Race: | Sex: | Age: | DOB: |
|---|---|---|---|---|---|---|---|---|
| | #2 | NAME | | Arr? Juv. Fel Misd. ORD Traff. NTA | Race: | Sex: | Age: | DOB: |
| | #3 | NAME | | Arr? Juv. Fel Misd. ORD Traff. NTA | Race: | Sex: | Age: | DOB: |
| | #4 | NAME | | Arr? Juv. Fel Misd. ORD Traff. NTA | Race: | Sex: | Age: | DOB: |

TERRICA CHASTINE
MY COMMISSION # DD 780109
EXPIRES: April 20, 2012
Bonded Thru Notary Public Underwriters

| DCF Notified? N | By Whom? | On Probation? N | Miranda Warning N | By Whom? | Invoked? N |
|---|---|---|---|---|---|

| Sworn to and subscribed before me this 24 day of August year 2008 | I swear or affirm the above statements are correct and true |
|---|---|
| | Officer's Signature _____ |
| Notary Public ☑   Law Enforcement or Corrections ☐ | Officer's Bus. Phone No.   4072462470 |
| Personally Known ☐   Produced Identification ☐ | Officer's Name/ID   HALL, YONG / 16126 |
| Type of Identification: | Booking/Receiving Signature |
| Signature   Terrica Chastine | |

**ICJIS Continuation of:** ☑ Arrest Affidavit    Document #: 122771
       ☐ Notice to Appear

| Defendant's Name: | MARTINEZ, MARIAM M | Case Number: | 2008-373307 |

**NARRATIVE:** The undersigned has probable cause to believe the above-named defendant on   <u>29</u> of <u>August</u>   <u>2008</u>

at <u>9:10 PM</u> at <u>3707 CONROY RD (MOSAIC APTS)</u>     (Zone: <u>E-6</u> ) in Orange County did

On 08/29/08 at approx. 2127hrs, I Ofc. Hall 16126 along with Ofc. Arriaga 15958 responded to 3707 Conroy Rd. Mosaic Apts. ref. to a disturbance. Upon arrival I made contact with the victim, Bruisset Privalon who provided a sworn written statement. The victim stated that he gave the defendant, Mariam Martinez, a ride from East Colonial to 3707 Conroy Rd. The victim stated that the defendant stated she had a American Express credit card to pay for the fare. The victim ran the credit card through his headquarters and the card declined several times. I explained to the defendant that she needed to make arrangements with the victim to pay the fare. The defendant demanded that he try the credit cards again because they were good. The victim tried them again and they declined. I explained to the defendant that she needed to contact someone and ask if they could bring money. The defendant stated that she did not know anyone and she refuses to pay. The defendant was very uncooperative and was interfering with my investigation. I asked to the defendant to be quiet several times and she did not comply. The defendant kept speaking over me refusing to listen to what I was saying. I explained to the defendant that if she refuse to pay her bill that she would be placed under arrest. The defendant stated that she was a paralegal student and she knew her rights and started to walk away. I gave verbal commands to the defendant to stay here and not to leave. The defendant did not listen to me and kept walking away. I grabbed the defendant by the left arm and detained her at the scene. The victim stated that he did not give the defendant free services and wish to prosecute. The defendant was placed under arrest for petit theft of taxi services in the amount of $22.25 and resisting w/o violence. The defendant was transported to the BRC without further incident The victim was provided with a victims rights booklet.

TERRICA CHASTINE
MY COMMISSION # DD 760109
EXPIRES: April 20, 2012
Bonded Thru Notary Public Underwriters

Sworn to and subscribed before me this <u>29</u> day of <u>August</u> year <u>2008</u>
Notary Public ☐   Law Enforcement or Corrections ☐
Personally Known ☐   Produced Identification ☐
Type of Identification:
Signature <u>Terrica Chastine</u>

I swear or affirm the above statements are correct and true
Officer's Signature _____ Officer's Bus. Phone No. _____
Officer's Name/ID   HALL, YONG   /   16126
Booking/Receiving Signature

1001 (12/04) COURT COPY   RECORD COPY   STATE ATTORNEY COPY   INMATE REC:   AGENCY/REPORT REVIEW COPY   DEFENDANT COPY

7.

# ORLANDO POLICE DEPARTMENT

Case #: 2008 - 373307

## Statement
Please fill out in full detail

| | | | | |
|---|---|---|---|---|
| Date of Statement: | Month: 08 | Day: 29 | Year: 08 | Time: 2201 |

Offense: Theft Taxi Services Petit

| | | | | |
|---|---|---|---|---|
| Date of Offense: | Month: 08 | Day: 29 | Year: 08 | Time: 2110 |

Suspect (last, first, middle): MARTINEZ, MARIAM M.

Location of Offense: 3707 CORDY RD MOSAIC APTS          District: E-6

**Person Code:** V

Name (last, first, middle): PREVALON, BRUISSET     Age: 47   DOB: 2/5/61   Race: B   Sex: M

Res.:
Address:
Bus.:

Type of ID shown: DL # P614 060 61 0450

I, BRUISSET Prevalon, do hereby voluntarily make the following statement without threat, coercion, offer of benefit, or favor by any persons whomsoever.

I Drive The lady From EAST Colonial Down Town Orlando To Condo APT Close at milliania mall, she don't whant opay the Total is 22.25¢

I did not lady Talk She go have free I wish Cto Plus Press charges

Sworn to and subscribed before me, this 29 day of August 2008

Ofc Hollwico

Notary Public ☐   Law Enforcement Officer ☒   Name Key ☐
Personally Known ☐   Produced Identification ☐   Type _____

My signature below means that I refuse to prosecute the person(s) named above for the alleged crime(s) that occurred to me or to the property under my control.

Signature N/A   Date _____

(Departmental policy prohibits use of this section in domestic violence cases.)

I swear/affirm the above and/or attached statements are correct and true.

Signature Brusset Prevalon

Victim Rights Booklet provided?   Yes ☒   No ☐
I will testify in court and prosecute criminally.   Initials:
Miranda Warning Read?   Yes ☐   No ☐   Page 1 of 1

1113.3 P&P 03/05/08     White: State Attorney   Yellow: Records   Pink: Investigator   Green: Victim

2.

IN THE COUNTY COURT FOR ORANGE COUNTY, STATE OF FLORIDA

| | |
|---|---|
| STATE OF FLORIDA | CASE NUMBER:   48-2008-MM-009955-O |
| vs. | ARREST DATE:   08/29/08 |
| MARIAM M. MARTINEZ | OFFICER:   Yong C. Hall |
| Defendant. | AGENCY/NUMBER:   ORPD, 08-373307 |
| / | DATE:   September 10, 2008 |

CHARGE(S):   1.  PETIT THEFT
2.  RESIST OFFICER-INTERFERE W LEO WO VIOLENCE

### NO INFORMATION NOTICE

COMES NOW the State of Florida, by and through the undersigned Assistant State Attorney and states that:

1.  From the investigation which has been made, it is the opinion of the writer that this case is not suitable for prosecution.

2.  This action is taken to clear the records and to release subject's bond if any has been posted responsive to the above charge(s).  If in custody, defendant should be released

PROVIDED THERE ARE NO OTHER CHARGES OR HOLDS AGAINST HER.

Lawson Lamar, State Attorney
Ninth Judicial Circuit of Florida

By: _____
Lisa M. Acharekar
Assistant State Attorney
Florida Bar No. # 0734721
415 N. Orange Avenue, P.O. Box 1673
Suite 300
Orlando, FL 32802
(407)836-1679

STATE OF FLORIDA, COUNTY OF ORANGE   I HEREBY CERTIFY
that the above and foregoing is a true copy of the original on file in this office
LYDIA GARDNER, Clerk of the Court

Date 9/17/08 By 3. ___ D.C.

6.

| Employee Information | Check Date | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 09-09-2008 | 08-23-2008 | 08-29-2008 | 4592 |

Federal Tax - Status: S   Allowances: 0                State Tax - Status: NONE   Allowances: NONE

| CURRENT EARNINGS DETAIL | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|
| Charge Date  Description | Rate | Hours/ Units | Amount | Description | Amount | Y-T-D |
| 08-29-2008 REGULAR PAY | 9.0000 | 32.00 | 288.00 | CHILD SUPPOR | 5.77 | 34.62 |
| | | | | GARNISH FEE | 1.00 | 6.00 |
| | | | | UNIFORMS | 0.00 | 50.00 |
| | | | | FEDERAL TAX | 29.20 | 358.94 |
| | | | | MEDICARE | 4.18 | 45.23 |
| | | | | SOC SECURITY | 17.86 | 193.38 |

| Totals: | 32.00 | 288.00 |
|---|---|---|

| DIRECT DEPOSIT | | | Net Pay |
|---|---|---|---|
| Type | Account | Amount | 229.99 |

Net Pay Y-T-D

2430.81

| Total: | 0.00 |   | Total: | 58.01 | 688.17 |
|---|---|---|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 2592.00 | | | | | |
| OVERTIME | 553.50 | | | | | |
| RETRO PAY | -108.00 | | | | | |

| Total: | 3118.98 |   |   | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|---|

| Employee Information | Check Date | | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 09-02-2008 | | 08-16-2008 | 08-22-2008 | 4524 |
| Federal Tax - Status: S   Allowances: 0 | | | State Tax - Status: NONE   Allowances: NONE | | |

| CURRENT EARNINGS DETAIL | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|
| Charge Date | Description | Rate | Hours/ Units | Amount | Description | Amount | Y-T-D |

| Charge Date | Description | Rate | Hours/Units | Amount |
|---|---|---|---|---|
| 08-22-2008 | REGULAR PAY | 9.0000 | 40.00 | 360.00 |
| | RETRO PAY | 13.5000 | -8.00 | -108.00 |
| 08-22-2008 | OVERTIME | 13.5000 | 4.00 | 54.00 |

| Description | Amount | Y-T-D |
|---|---|---|
| CHILD SUPPOR | 5.77 | 28.85 |
| GARNISH FEE | 1.00 | 5.00 |
| UNIFORMS | 0.00 | 50.00 |
| FEDERAL TAX | 31.90 | 329.74 |
| MEDICARE | 4.44 | 41.05 |
| SOC SECURITY | 18.97 | 175.52 |

| Totals: | 36.00 | 306.00 |
|---|---|---|

| DIRECT DEPOSIT | | | Net Pay |
|---|---|---|---|
| Type | Account | Amount | 243.92 |
| | | | Net Pay Y-T-D |
| | | | 2200.82 |
| | Total: | 0.00 | Total: 62.08   630.16 |

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 2304.00 | | | | | |
| OVERTIME | 553.50 | | | | | |
| RETRO PAY | -108.00 | | | | | |

| Total: | 2830.98 | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|

| Employee Information | Check Date | | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 08-26-2008 | | 08-09-2008 | 08-15-2008 | 007866 |
| Federal Tax  Status: S  Allowances: 0 | | | State Tax - Status: NONE  Allowances: NONE | | |

| CURRENT EARNINGS DETAIL | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|
| Charge Date  Description | Rate | Hours/ Units | Amount | Description | Amount | Y-T-D |
| 08-15-2008 REGULAR PAY | 9.0000 | 40.00 | 360.00 | UNIFORMS | 25.00 | 50.00 |
| | | | | CHILD SUPPOR | 5.77 | 23.08 |
| | | | | GARNISH FEE | 1.00 | 4.00 |
| | | | | FEDERAL TAX | 40.00 | 297.84 |
| | | | | MEDICARE | 5.22 | 36.61 |
| | | | | SOC SECURITY | 22.32 | 156.55 |

| | Totals: | 40.00 | 360.00 |
|---|---|---|---|

| DIRECT DEPOSIT | | | Net Pay |
|---|---|---|---|
| Type | Account | Amount | 260.69 |
| | | | Net Pay Y-T-D |
| | | | 1956.90 |
| | Total: | 0.00 | |

| | Total: | 99.31 | 568.08 |
|---|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 1944.00 | | | | | |
| OVERTIME | 499.50 | | | | | |

| Total: | 2524.98 | | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|---|

F. /ASTA ., SUCIATES, INC - ORLANDU (01/91)                              voucher #: 607696  Sort Order: 79

| Employee Information | Check Date | | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 08-19-2008 | | 08-02-2008 | 08-08-2008 | 007679 |
| Federal Tax - Status: S    Allowances: 0 | | | State Tax - Status: NONE  Allowances: NONE | | |

| CURRENT EARNINGS DETAIL | | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|---|
| Charge Date | Description | Rate | Hours/ Units | Amount | Description | Amount | Y-T-D |
| 08-08-2008 | REGULAR PAY | 9.0000 | 40.00 | 360.00 | UNIFORMS | 25.00 | 25.00 |
| | OVERTIME | 13.5000 | 24.00 | 324.00 | CHILD SUPPOR | 5.77 | 17.31 |
| 08-08-2008 | | | | | GARNISH FEE | 1.00 | 3.00 |
| | | | | | FEDERAL TAX | 91.69 | 257.84 |
| | | | | | MEDICARE | 9.92 | 31.39 |
| | | | | | SOC SECURITY | 42.41 | 134.23 |

| | Totals: | 64.00 | 684.00 |
|---|---|---|---|

| DIRECT DEPOSIT | | | Net Pay |
|---|---|---|---|
| Type | Account | Amount | |
| | . . . | | 508.21 |
| | | | Net Pay Y-T-D |
| | | | 1696.21 |
| | Total: | 0.00 | |

| | Total: | 175.79 | 468.77 |
|---|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 1584.00 | | | | | |
| OVERTIME | 499.50 | | | | | |

| Total: | 2164.98 | | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|---|

KEY VISTA ASSOCIATES, INC - ORLANDO (01791)                    VOUCHER #: 00733   SORT ORDER: 33

| Employee Information | Check Date | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 08-12-2008 | 07-26-2008 | 08-10-2008 | 7468 |
| Federal Tax - Status: S   Allowances: 0 | | State Tax - Status: NONE   Allowances: NONE | | |

| CURRENT EARNINGS DETAIL | | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|---|
| Charge Date | Description | Rate | Hours/ Units | Amount | Description | Amount | Y-T-D |
| 08-10-2008 | REGULAR PAY | 9.0000 | 40.00 | 360.00 | CHILD SUPPOR | 5.77 | 11.54 |
|  | OVERTIME | 13.5000 | 5.00 | 67.50 | GARNISH FEE | 1.00 | 2.00 |
| 08-10-2008 |  |  |  |  | FEDERAL TAX | 50.13 | 166.15 |
|  |  |  |  |  | MEDICARE | 6.19 | 21.47 |
|  |  |  |  |  | SOC SECURITY | 26.50 | 91.82 |

| Totals: | 45.00 | 427.50 |
|---|---|---|

| DIRECT DEPOSIT | | | Net Pay |
|---|---|---|---|
| Type | Account | Amount | 337.91 |
|  |  |  | Net Pay Y-T-D |
|  |  |  | 1188.00 |
| Total: | | 0.00 | |

| Total: | 89.59 | 292.98 |
|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 |  |  |  |  |  |
| REGULAR PAY | 1224.00 |  |  |  |  |  |
| OVERTIME | 175.50 |  |  |  |  |  |

| Total: | 1480.98 | | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|---|

KEY VISTA ASSOCIATES, INC - ORLANDO (01/91)

| Employee Information | Check Date | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|
| | | 07-19-2008 | 07-25-2008 | 7202 |
| MARIAM MARTINEZ - (P38175) | 08-05-2008 | | | |

Federal Tax - Status: S   Allowances: 0          State Tax - Status: NONE   Allowances: NONE

### CURRENT EARNINGS DETAIL

| Charge Date | Description | Rate | Hours/ Units | Amount |
|---|---|---|---|---|
| 07-25-2008 | REGULAR PAY | 9.0000 | 40.00 | 360.00 |
| | OVERTIME | 13.5000 | 8.00 | 108.00 |
| 07-25-2008 | | | | |

### DEDUCTIONS / TAXES

| Description | Amount | Y-T-D |
|---|---|---|
| CHILD SUPPOR | 5.77 | 5.77 |
| GARNISH FEE | 1.00 | 1.00 |
| FEDERAL TAX | 56.20 | 116.02 |
| MEDICARE | 6.79 | 15.28 |
| SOC SECURITY | 29.02 | 65.32 |

| | Totals: | 48.00 | 468.00 |
|---|---|---|---|

### DIRECT DEPOSIT

| Type | Account | Amount |
|---|---|---|

| | Total: | 0.00 |
|---|---|---|

**Net Pay**

369.22

**Net Pay Y-T-D**

850.09

| | Total: | 98.78 | 203.39 |
|---|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 864.00 | | | | | |
| OVERTIME | 108.00 | | | | | |

| | Total: | 1053.48 | | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|

| Net Pay Y-T-D |
|---|
| 480.87 |

| Total: | 0.00 | | Total: | 67.54 | 104.61 |
|---|---|---|---|---|---|

| Y-T-D EARNINGS | | PAID TIME OFF | | EMPLOYER CONTRIBUTIONS | | |
|---|---|---|---|---|---|---|
| Description | Amount | Description | Balance | Description | Amount | Y-T-D |
| TRAINING | 81.48 | | | | | |
| REGULAR PAY | 554.00 | | | | | |

| Total: | 535.48 | | Total: | 0.00 | 0.00 |
|---|---|---|---|---|---|

mvQuery Version:  NAT_CHECX_PRINTING_Duplex 014

▽ REMOVE DOCUMENT ALONG THIS PERFORATION ▽

KEY VISTA ASSOCIATES, INC - ORLANDO (01791)            Voucher #: 00867o  Sort Order: 57

| Employee Information | Check Date | Period Start Date | Period End Date | Check No |
|---|---|---|---|---|
| MARIAM MARTINEZ - (P38175) | 07-29-2008 | 07-12-2008 | 07-18-2008 | 6991 |

Federal Tax - Status: S   Allowances: 0            State Tax - Status: NONE  Allowances: NONE

| CURRENT EARNINGS DETAIL | | | | DEDUCTIONS / TAXES | | |
|---|---|---|---|---|---|---|
| Charge Date | Description | Rate Hours/ Units | Amount | Description | Amount | Y-T-D |
| 07-18-2008 | REGULAR PAY | 9.0000  40.00 | 360.00 | FEDERAL TAX | 40.00 | 59.82 |
| | | | | MEDICARE | 5.22 | 8.49 |
| | | | | SOC SECURITY | 22.32 | 36.30 |

| | Totals: | 40.00 | 360.00 |
|---|---|---|---|

| DIRECT DEPOSIT | | Net Pay |
|---|---|---|
| Type | Amount  Amount | 292.46 |



| a Control number 1219880 1-389 | Company PLA | Department 22015 |
|---|---|---|

c Employer's name, address, and ZIP code          00003289940

**THE PLACERS LTD**
**2015 SOUTH PARK PLACE**
**ATLANTA GA 30339**

| 1 Wages, tips, other comp. 47.50 | 2 Federal income tax withheld |
|---|---|
| 3 Social security wages 47.50 | 4 Social security tax withheld 2.95 |
| 5 Medicare wages and tips 47.50 | 6 Medicare tax withheld 0.69 |
| b Employer identification number 59-3482201 | d Employee's social security number 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 |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp  Ret. plan  3rd party sick pay |
| 15 State  Employer's state I.D.# IL  2976-2227 | 16 State wages, tips, etc. 47.50 |
| 17 State income tax 0.27 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

a/f   Employee's name, address and ZIP code

**MARIAM MALONE MARTINEZ**
**P.O. BOX 6748**
**CHICAGO IL 60680**

**Employee Reference Copy**
**W-2** **Wage and Tax Statement** **2008**
Copy C - for employee's records.



Am Ex
AJ oF
9/1e/ue

8.64



A M Ex
(dled
9/1e/08

13.81

4.

Transaction Details                                                   Page 1 of 1





**PERSONAL CARDS**                      Site Help | Search | Contact Us  [W]  LOG IN

Manage Your Account    Explore Rewards & Benefits    Additional Products & Services    Apply for a Card

# Know Your Balance
## American Express Gift Cards
## Available Funds and Transaction History

Please note that your available funds may reflect transactions that are still pending. Learn more about pending transactions.

**Available Funds as of October 23, 2008**

| Card Number | Available Funds |
|---|---|
| XXXXXXXXXX57588 | $0.52 |

**Review Other Periods**
August 2008

### Transaction History for August 2008

| Transactions | Credits | Debits |
|---|---|---|
| **August 29, 2008**<br>NEW YORK BROADWAY 54ORLANDO FL<br>000377030 4073518989 08/29/08<br>Reference 875158766 | | -$15.00 |
| **August 29, 2008**<br>FRATELLI'S RESTAURANORLANDO FL<br>RESTAURANT 08/29/08<br>Reference 875145381 | | -$16.40 |

*unknown?*
*payment* —
*& maybe the*
*cab company.*

Learn more and Order:
>Gift Cheques & Cards
>Travelers Cheques & Foreign Currency

>Available Funds and History FAQs

About American Express | Careers @ American Express | Affiliate Program | Fraud Protection Center | American Express Labs
View Website Rules and Regulations, Trademarks and Privacy Statement of American Express. Copyright © 1995 - 2008 American Express Company. All Rights Reserved. Users of this site agree to be bound by the terms of the American Express Web Site Rules and Regulations.







## PERSONAL CARDS

Site Help | Search | Contact Us ▶ LOG IN

Manage Your Account    Explore Rewards & Benefits    Additional Products & Services    Apply for a Card

# Know Your Balance
## American Express Gift Cards
## Available Funds and Transaction History

Please note that your available funds may reflect transactions that are still pending.
Learn more about pending transactions.

## Available Funds as of October 23, 2008

| Card Number | Available Funds |
|---|---|
| XXXXXXXXXX57505 | $0.92 |

Review Other Periods
August 2008

## Transaction History for August 2008

| Transactions | Credits | Debits |
|---|---|---|
| **August 28, 2008**<br>FEDEX OFFICE #3994 0ORLANDO FL<br>03994002267 OFFICE SUPPLY STORE 08/28/08<br>Reference 875005964 | | -$1.26 |
| **August 28, 2008**<br>PITA PIT ORANGE AVE ORLANDO FL<br>042000063 0 4074477482 08/28/08<br>Reference 874942867 | | -$11.61 |
| **August 27, 2008**<br>PUBLIX #662 00000066ORLANDO FL<br>99999998241 4078968154 08/27/08<br>Reference 874888911 | | -$7.05 |
| **August 27, 2008**<br>PUBLIX #605 00000060ORLANDO FL<br>99999998241 4078168335 08/27/08<br>Reference 874888885 | | -$11.91 |
| **August 27, 2008**<br>PITA PIT ORANGE AVE ORLANDO FL<br>041000082 0 4074477482 08/27/08<br>Reference 874765766 | | -$9.53 |

Learn more and Order:
>Gift Cheques & Cards
>Travelers Cheques & Foreign Currency

>Available Funds and History FAQs



HOME  PERSONAL CARDS  TRAVEL  SMALL BUSINESS  CORPORATIONS  MERCHANTS

**PERSONAL CARDS**

Site Help | Search | Contact Us  ▶  **LOG IN**

Manage Your Account    Explore Rewards & Benefits    Additional Products & Services    Apply for a Card



# Know Your Balance
## American Express Gift Cards
## Available Funds and Transaction History

Please note that your available funds may reflect transactions that are still pending. Learn more about pending transactions.

### Available Funds as of October 23, 2008

| Card Number | Available Funds |
|---|---|
| XXXXXXXXXX57505 | **$0.92** |

**Review Other Periods**
September 2008

### Transaction History for September 2008

| Transactions | Credits | Debits |
|---|---|---|
| **September 25, 2008**<br>PITA PIT ORANGE AVE ORLANDO FL<br>070000056 0 4074477482 09/25/08<br>Reference 882845300 | | -$7.72 |
| **September 04, 2008**<br>CARD: POS Client Funding<br>CVS INC ORLANDO FLORIDA<br>Reference 875816900 | $50.00 | |

Learn more and Order:
>Gift Cheques & Cards
>Travelers Cheques & Foreign Currency

>Available Funds and History FAQs

About American Express | Careers @ American Express | Affiliate Program | Fraud Protection Center | American Express Labs
View Website Rules and Regulations, Trademarks and Privacy Statement of American Express. Copyright © 1995 - 2008 American Express Company. All Rights Reserved. Users of this site agree to be bound by the terms of the American Express Web Site Rules and Regulations.



HOME | PERSONAL CARDS | TRAVEL | SMALL BUSINESS | CORPORATIONS | MERCHANTS

## PERSONAL CARDS

Site Help | Search | Contact Us  🔍 LOG IN

Manage Your Account    Explore Rewards & Benefits    Additional Products & Services    Apply for a Card



# Know Your Balance
**American Express Gift Cards**
**Available Funds and Transaction History**

Please note that your available funds may reflect transactions that are still pending. Learn more about pending transactions.

**Available Funds as of October 23, 2008**

| Card Number | Available Funds |
|---|---|
| XXXXXXXXXX57588 | $0.52 |

**Review Other Periods**
September 2008

## Transaction History for September 2008

| Transactions | Credits | Debits |
|---|---|---|
| **September 27, 2008**<br>BRIAN'S RESTAURANT #ORLANDO FL<br>01460061 4078969912 09/27/08<br>Reference 882984089 | | -$4.22 |
| **September 25, 2008**<br>USPS 1169180807 ORLANDO FL<br>169180807 4078435673 09/25/08<br>Reference 882814773 | | -$1.77 |
| **September 23, 2008**<br>CHICK-FIL-A #01406 0WINTER PARK FL<br>000243316 4076222445 09/23/08<br>Reference 882337541 | | -$7.30 |
| **September 11, 2008**<br>7-ELEVEN 10033 00071ORLANDO FL<br>900070912 7 407-894-0887 09/11/08<br>Reference 878634641 | | -$4.79 |
| **September 04, 2008**<br>CARD: POS Client Funding<br>CVS INC ORLANDO FLORIDA<br>Reference 875816898 | $50.00 | |

Learn more and Order:
>Gift Cheques & Cards
>Travelers Cheques & Foreign Currency

>Available Funds and History FAQs

5.

# Pentagon Federal Credit Union
*Superior Rates. Proven Service.*

CONSOLIDATED STATEMENT

Box 1432, Alexandria, VA 22313-2032    PenFed.org    800-247-5626

| Prepared for Member | MARIAM MARTINEZ |
|---|---|
| Member Number | ▓▓▓▓▓▓▓ |
| Statement Period | *08/13/2008 THRU 09/13/2008* |

MARIAM MARTINEZ
PO BOX 1245
ORLANDO , FL 32802-1245

Page 1 of 2

---

*REGULAR SHARE ACCOUNT*                          Account Number 

| Date | Description | | | Shares Paid in or Withdrawn | Other Charges | Share Balance |
|---|---|---|---|---|---|---|
| 08/13/08 | PREVIOUS BALANCE | | | | | 707.09 |
| 08/15/08 | AUTOMATIC TRANSFER,DEBIT | | | -25.00 | | 682.09 |
| 08/16/08 | ATM FEE | | | -1.50 | -1.50 | 680.59 |
| 08/16/08 | ATM CARD WITHDRAWAL | | | -22.50 | | 658.09 |
| | ORLANDO MAIN OFF | ORLANDO | FL | | | |
| 08/16/08 | FUNDS TRANSFER CREDIT | | | 120.00 | | 778.09 |
| 08/16/08 | ATM FEE | | | -1.50 | -1.50 | 776.59 |
| 08/16/08 | ATM CARD WITHDRAWAL | | | -122.00 | | 654.59 |
| | 30 N. Summerlin AveUS | Orlando | FL | | | |
| 08/18/08 | ATM FEE | | | -1.50 | -1.50 | 653.09 |
| 08/18/08 | ATM CARD WITHDRAWAL | | | -42.00 | | 611.09 |
| | 408 E MICHIGAN ST | ORLANDO | FL | | | |
| 08/18/08 | ATM FEE | | | -1.50 | -1.50 | 609.59 |
| 08/18/08 | ATM CARD WITHDRAWAL | | | -61.00 | | 548.59 |
| | 1400 E COLONIAL DRIVE | ORLANDO | FL | | | |
| 08/18/08 | MAIL DEPOSIT | | | 200.00 | | 748.59 |
| 08/18/08 | ATM FEE | | | -1.50 | -1.50 | 747.09 |
| 08/18/08 | ATM CARD WITHDRAWAL | | | -41.00 | | 706.09 |
| | 5265 S JOHN YOUNG PKW | ORLANDO | FL | | | |
| 08/20/08 | ATM FEE | | | -1.50 | -1.50 | 704.59 |
| 08/20/08 | ATM CARD WITHDRAWAL | | | -22.00 | | 682.59 |
| | 30 N. Summerlin AveUS | Orlando | FL | | | |
| 08/20/08 | ATM FEE | | | -1.50 | -1.50 | 681.09 |
| 08/20/08 | ATM CARD WITHDRAWAL | | | -42.25 | | 638.84 |
| | 445 W. AMELIA ST. | ORLANDO | FL | | | |
| 08/21/08 | ATM FEE | | | -1.50 | -1.50 | 637.34 |
| 08/21/08 | ATM CARD WITHDRAWAL | | | -23.00 | | 614.34 |
| | 20 N ORANGE AVE | ORLANDO | FL | | | |
| 08/22/08 | AUTOMATIC TRANSFER,DEBIT | | | -25.00 | | 589.34 |
| 08/25/08 | WESTERN UNION DEBIT | | | -42.00 | | 547.34 |
| 08/29/08 | AUTOMATIC TRANSFER,DEBIT | | | -25.00 | | 522.34 |
| 08/29/08 | WESTERN UNION DEBIT | | | -100.00 | | 422.34 |
| 09/05/08 | AUTOMATIC TRANSFER,DEBIT | | | -25.00 | | 397.34 |
| 09/05/08 | MAIL DEPOSIT | | | 100.00 | | 497.34 |
| 09/11/08 | FUNDS TRANSFER CREDIT | | | 300.00 | | 797.34 |
| 09/12/08 | AUTOMATIC TRANSFER,DEBIT | | | -25.00 | | 772.34 |
| 09/12/08 | ATM FEE | | | -1.50 | -1.50 | 770.84 |
| 09/12/08 | ATM CARD WITHDRAWAL | | | -42.00 | | 728.84 |
| | 30 N. Summerlin AveUS | Orlando | FL | | | |
| 09/13/08 | ATM FEE | | | -1.50 | -1.50 | 727.34 |
| 09/13/08 | ATM CARD WITHDRAWAL | | | -21.00 | | 706.34 |
| | 1400 E COLONIAL DRIVE | ORLANDO | FL | | | |



**ORLANDO HEALTH**
PO BOX 3475
TOLEDO, OH 43607-0475

---

**CREDIT CARD PAYMENT INFORMATION**

☐ MASTERCARD  ☐ DISCOVER  ☐ VISA  ☐ AMEX

| CARD NUMBER | | | |
| SIGNATURE | | EXP DATE | SECURITY CODE |
| | | AMOUNT | |

PATIENT NAME
MARIAM MARTINEZ

ACCOUNT NUMBER
4066182587

STATEMENT DATE
12/07/08

AMOUNT NOW DUE
$490.20

AMOUNT ENCLOSED $

PLEASE MAKE CHECKS PAYABLE TO:

653088A

---

Payment Arrangement Plan Selected:

☐ Option 1  ☐ Option 2  ☐ Option 3

0101

560 01
MARIAM MARTINEZ
PO BOX 1245
ORLANDO, FL 32802-1245

ORLANDO HEALTH
P.O. BOX 620000 STOP 9936
ORLANDO, FL 32891-9936

---

☐ If your insurance or personal information has changed, check box and fill out the back of this form.

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

---

| PATIENT NAME | ACCOUNT NUMBER | SERVICE DATE FROM | SERVICE DATE THROUGH |
|---|---|---|---|
| MARIAM MARTINEZ | 4066182587 | 11/04/2008 | 11/05/2008 |

| DESCRIPTION OF CHARGE/SERVICE | TOTAL |
|---|---|
| **Facility: South Seminole Hospital** | |
| PHARMACY SERVICES AND SUPPLIES CHARGES | 40.00 |
| MEDICAL/SURGICAL SERVICES AND SUPPLIES | 371.00 |
| EMERGENCY ROOM SERVICES AND SUPPLIES | 406.00 |
| **Total Charges** | **817.00** |

**INSURANCE COVERAGE**

Primary:    Self Pay
Secondary:  Self Pay
Tertiary:   Self Pay

**MESSAGES**

We have previously attempted to contact you for payment of this account.

Your payment due date has passed, the account is now delinquent.

THIS WILL BE OUR FINAL NOTICE TO YOU.

For payment plan options, please see the back of this statement. You may indicate your selection at the top of this form and return it to us or contact us by the due date as listed below.

If we are not notified, your account will be referred for delinquent collections.

| INSURANCE PAYMENTS & ADJUSTMENTS | -326.80 |
|---|---|
| WHAT YOU HAVE PAID | 0.00 |
| CURRENT BALANCE | $490.20 |
| PLEASE PAY THIS AMOUNT THANK YOU | $490.20 |
| DUE DATE | 12/23/2008 |

For customer service regarding your account please contact us at: billing@orlandohealth.com or by phone at (407)650-3800 or (800)424-6998.  Please reference your account number - 4066182587.

FOR CHANGE OF ADDRESS, MISSPELLINGS OR OTHER ERRORS, PLEASE PRINT CORRECTIONS.

| Patient's Name | | | | Phone # ( ) |
|---|---|---|---|---|
| Patient's Address | City | State | | Zip Code |

## IF YOU HAVE NOT SUPPLIED INSURANCE INFORMATION, PLEASE DO SO HERE:

| PRIMARY INSURANCE COVERAGE | Patient's Relationship to Insured ☐ SELF   ☐ SPOUsE ☐ CHILD   ☐ OTHER | SECONDARY INSURANCE COVERAGE | Patient's Relationship to Insured ☐ SELF   ☐ SPOUSE ☐ CHILD   ☐ OTHER |
|---|---|---|---|
| Insurance Company Name | Phone # ( ) | Insurance Company Name | Phone # ( ) |
| Insurance Company Address | | Insurance Company Address | |
| Policy Holder's Name | Birthdate   /   / | Policy Holder's Name | Birthdate   /   / |
| Policy # | Group # | Policy # | Group # |
| Employer's Name | Phone # ( ) | Employer's Name | Phone # ( ) |
| Employer's Address | | Employer's Address | |

## Regarding Insurance:
As a courtesy to our patients, we will file insurance claims to primary and secondary insurance companies.

## For Your Information:
Florida law standardizes the health insurance claim forms we utilize to submit insurance claims.
Health plans are required by law to pay, contest or deny your claim within 20 days of receipt if we file the claim electronically, or within 40 days if the claim was not submitted electronically. Claims that are contested by your insurance company must be either paid or denied within 90 days if we file electronically, or 120 days if not submitted electronically.
Although a service might be ordered by your physician, the service might not be covered by your insurance plan. Please review the benefit structure, coverage requirements and exclusions detailed in your insurance policy. You may be billed for non-covered or excluded services, as deemed by your insurance company.

## For payment arrangements we offer secure and flexible payment options
1. Standard Payment Plan. 12 equal monthly payments, interest free.
    Requires a minimum payment of $25 or 1/12th of the balance, whichever is greater.
2. Automatic Payment Plan. 24 equal monthly payments, interest free.
    Requires a minimum payment of $25 or 1/24th of the balance, whichever is greater.
3. Complete Credit Plan. 3 year payment plan at a competitive interest rate.
    Requires a minimum payment of $36 or 1/36th of the balance, whichever is greater.

## Physician and Other Billing Information
Physicians, Radiologists, Pathologist, Anesthesiologists and other providers will bill you separately.
Some of the most frequently requested telephone numbers are listed below.

| NAME | PHONE | WEBSITE / E-MAIL |
|---|---|---|
| Orlando Health Physician & Professional Srvc. | 321.841.3900 or 800.305.8290 | physicianbilling@orlandohealth.com |
| Ameripath Orlando | 866.450.7034 | Info@ameripath.com |
| Anesthesiologists of Greater Orlando | 407.896.9500 | agomd.com |
| Emergency Physicians of Central Florida | 888.896.3293 | thedoctorbill.com |
| Medical Center Radiology Group | 800.828.8994 | mcrg.com |
| Omni Flight Helicopters | 800.760.1583 | omniflight.com |
| Pediatric Anesthesia Consultants | 727.456.3288 | |
| Pathology Specialists | 407.422.1377 | pathologyspecialists.com |
| Rural Metro Ambulance | 888.876.0740 | rmetro.com |
| South Lake Anesthesia Services | 352.243.9114 | |
| South Lake Hospitalists | 407.932.7120 | |
| Wolverine Anesthesia Consultants | 407.872.2244 | wacmdpa.com |

For customer service regarding your Orlando Health account you may contact us via e-mail at billing@orlandohealth.com or call 407.650.3800 or 800.424.6998. Please reference your **account number** and the **patient name**.





# CODE OF ETHICS FOR SECURITY OFFICERS

1. To accept the responsibilities and fulfill the obligations of his/her role. Protecting life and property, preventing and reducing losses and crimes against his/her employer's business or other organizations and institutions to which he/she is assigned.

2. To conduct him/her self with honesty and adhere to the highest moral principles in the performance of their security duties.

3. To be diligent and dependable in discharging his/ her duties and to uphold at all times the laws, policies and procedures that protect the rights of others.

4. To observe the precepts of truth, accuracy and discretion without allowing personal feelings, prejudices and animosities or friendships to influence his/ her judgments.

5. To report to his/her supervisor, without hesitation, any violation of the law or his/her employers or clients regulations.

6. To respect and protect the confidential and privileged information of his/her employer or client beyond the term of employment, except where their interests are contrary to law or to this Code of Ethics.

7. To cooperate with all recognized and responsible law enforcement and government agencies in matters with their jurisdiction.

8. To accept no compensation, commission, gratuity or other advantage without the knowledge and consent of their employer.

9. To conduct him/ her self professionally at all times and to perform their duties in a manner that reflects credit upon him/ her self, their employer and the security profession.

10. To strive continually to improve his/ her performance by seeking training and educational opportunities that will better prepare him/ her for their security duties.

Signature of Officer: _____   Date: _7 July 08_

Signature of Dir. Of Operations: _____   Date: _____

contendere to, regardless of adjudication, or being convicted of a crime that directly relates to the business for which the license is held or sought. A plea of nolo contendere shall create a rebuttable presumption of guilt to the underlying criminal charges, and the department shall allow the individual being disciplined or denied an application for a license to present any mitigating circumstances surrounding his or her plea.

(d) A false statement by the licensee that any individual is or has been in his or her employ.

(e) A finding that the licensee or any employee is guilty of willful betrayal of a professional secret or any unauthorized release of information acquired as a result of activities regulated under this chapter.

(f) Proof that the applicant or licensee is guilty of fraud or deceit, or of negligence, incompetency, or misconduct, in the practice of the activities regulated under this chapter.

(g) Conducting activities regulated under this chapter without a license or with a revoked or suspended license.

(h) Failure of the licensee to maintain in full force and effect the commercial general liability insurance coverage required by s. 493.6110.

(i) Impersonating, or permitting or aiding and abetting an employee to impersonate, a law enforcement officer or an employee of the state, the United States, or any political subdivision thereof by identifying himself or herself as a federal, state, county, or municipal law enforcement officer or official representative, by wearing a uniform or presenting or displaying a badge or credentials that would cause a reasonable person to believe that he or she is a law enforcement officer or that he or she has official authority, by displaying any flashing or warning vehicular lights other than amber colored, or by committing any act that is intended to falsely convey official status.

(j) Commission of an act of violence or the use of force on any person except in the lawful protection of one's self or another from physical harm.

(k) Knowingly violating, advising, encouraging, or assisting the violation of any statute, court order, capias, warrant, injunction, or cease and desist order, in the course of business regulated under this chapter.

(l) Soliciting business for an attorney in return for compensation.

(m) Transferring or attempting to transfer a license issued pursuant to this chapter.

(n) Employing or contracting with any unlicensed or improperly licensed person or agency to conduct activities regulated under this chapter, or performing any act that assists, aids, or abets a person or business entity in engaging in unlicensed activity, when the licensure status was known or could have been ascertained by reasonable inquiry.

(o) Failure or refusal to cooperate with or refusal of access to an authorized representative of the department engaged in an official investigation pursuant to this chapter.

(p) Failure of any partner, principal corporate officer, or licensee to have his or her identification card in his or her possession while on duty.

(q) Failure of any licensee to have his or her license in his or her possession while on duty, as specified in s. 493.6111(1).

(r) Failure or refusal by a sponsor to certify a biannual written report on an intern or to certify completion or termination of an internship to the department within 15 working days.

(s) Failure to report to the department any person whom

the licensee knows to be in violation of this chapter or the rules of the department.

(t) Violating any provision of this chapter.

(u) In addition to the grounds for disciplinary action prescribed in paragraphs (a)-(t), Class "R" recovery agencies, Class "E" recovery agents, and Class "EE" recovery agent interns are prohibited from committing the following acts:

1. Recovering a motor vehicle, mobile home, motorboat, aircraft, personal watercraft, all-terrain vehicle, farm equipment, or industrial equipment that has been sold under a conditional sales agreement or under the terms of a chattel mortgage before authorization has been received from the legal owner or mortgagee.

2. Charging for expenses not actually incurred in connection with the recovery, transportation, storage, or disposal of repossessed property or personal property obtained in a repossession.

3. Using any repossessed property or personal property obtained in a repossession for the personal benefit of a licensee or an officer, director, partner, manager, or employee of a licensee.

4. Selling property recovered under the provisions of this chapter, except with written authorization from the legal owner or the mortgagee thereof.

5. Failing to notify the police or sheriff's department of the jurisdiction in which the repossessed property is recovered within 2 hours after recovery.

6. Failing to remit moneys collected in lieu of recovery of a motor vehicle, mobile home, motorboat, aircraft, personal watercraft, all-terrain vehicle, farm equipment, or industrial equipment to the client within 10 working days.

7. Failing to deliver to the client a negotiable instrument that is payable to the client, within 10 working days after receipt of such instrument.

8. Falsifying, altering, or failing to maintain any required inventory or records regarding disposal of personal property contained in or on repossessed property pursuant to s. 493.6404(1).

9. Carrying any weapon or firearm when he or she is on private property and performing duties under his or her license whether or not he or she is licensed pursuant to s. 790.06.

10. Soliciting from the legal owner the recovery of property subject to repossession after such property has been seen or located on public or private property if the amount charged or requested for such recovery is more than the amount normally charged for such a recovery.

11. Wearing, presenting, or displaying a badge in the course of performing a repossession regulated by this chapter.

(2) When the department finds any violation of subsection (1), it may do one or more of the following:

(a) Deny an application for the issuance or renewal of a license.

(b) Issue a reprimand.

(c) Impose an administrative fine not to exceed $1,000 for every count or separate offense.

(d) Place the licensee on probation for a period of time and subject to such conditions as the department may specify.

(e) Suspend or revoke a license.

(3) The department may deny an application for licensure citing lack of good moral character only if the finding by the department of lack of good moral character is supported by

P/N 23-00873-008

# The American Express® Gift Card Cardholder Agreement

The following terms and conditions govern your use of the American Express Gift Card ("Terms and Conditions"). By purchasing, signing or using the American Express Gift Card, you are agreeing to the Terms and Conditions. The terms "you" and "your" refer to the person who purchased the American Express Gift Card and/or the person who is using the American Express Gift Card. The terms "we," "our" and "us" refer to American Express Travel Related Services Company, Inc. The term "Gift Card" refers to the American Express Gift Card.

## The Gift Card

The Gift Card is a prepaid payment device that comes with a set dollar value printed on the front of the card. It is not a credit card, charge card or debit card. The Gift Card can be used at retailers, restaurants, amusement parks, sporting events, movie and other theaters, spas, salons and certain other merchants that are located in the United States and that accept the American Express Card, including mail order, online and brick and mortar establishments. A location where the Gift Card can be used is referred to in these Terms and Conditions as a "Merchant." The Gift Card cannot be used at car rentals, cruise lines, for recurring billing purchases, or at casinos or ATMs. Usage restrictions apply for international airlines.

## Service Fees

We encourage you to use your Gift Card soon! While you may leave Available Funds, as defined herein, on the Gift Card as long as you wish, starting 366 days after the date your Gift Card was purchased, and subject to applicable law, we will deduct a monthly service fee of $2.00 from your Available Funds. If we send you a replacement card for a lost or stolen Gift Card, the initial 12 month (365 day) waiver period is still tracked from the date your original Gift Card was purchased.

## Other Fees

Subject to applicable law, we will deduct a $5.95 replacement card fee from your Available Funds to replace a lost or stolen Gift Card. Subject to applicable law, if you ask us to issue you a check for the amount of any Available Funds remaining on the Gift Card after the "valid thru" date expires, we will deduct a $10.00 check-issuance fee from the check we send you."

## Before Using the Gift Card

Before using your Gift Card, you must sign your signature on the back, where indicated. **Write down the Gift Card number and the Customer Service number on a separate piece of paper in case the Gift Card is lost or stolen.** If you are required to activate the Gift Card, instructions will be provided on the face of the card. We reserve the right to delay activation and use of the Gift Card for up to 4 hours after purchase. During activation or any Customer Service call, we may request that you provide the card security code printed on the front of your Gift Card, as well as additional identification information such as your home phone number, date of birth, and zip code. We may use this data for a range of purposes, including but not limited to facilitating refunds if the Gift Card is lost or stolen, enhancing usage at Merchants that may require zip code authorization, and aiding in collection efforts in the event of a "shortage." We will hold your information in confidence in accordance with the section below entitled "Data Protection and Privacy."

## Information about Available Funds on the Gift Card

The value of the funds available on the Gift Card at any given time is referred to in these Terms and Conditions and on the back of your Gift Card as the "Available Funds." The Available Funds on the Gift Card at the time of purchase is printed on the front of the Gift Card and, if

activation is required, these funds will only be available for spending after activation. If activation is required, the Gift Card has no value until it is activated. As you use the Gift Card, the Available Funds will be reduced by the full amount of each purchase including taxes, and any other fees. Once the Available Funds are depleted, the Gift Card is no longer valid and you agree (i) not to use the Gift Card and (ii) after you are sure that you do not intend to return any merchandise purchased with the Gift Card, to cut it in half and discard it.

### Tracking Available Funds

You must keep track of the amount of Available Funds. To obtain your Available Funds balance or to request information about previous transactions, visit www.americanexpress.com/giftcard or call toll free within the United States — 1-877-AXP-GIFT ("Customer Service Number"). **Please note:** Your Available Funds balance will reflect all authorization requests that have been submitted by Merchants. If you have a question about a transaction that has been posted to your Gift Card (e.g., the same transaction has been posted twice or for the incorrect amount), please notify us immediately, but no later than 60 days from the date of the transaction, by calling the Customer Service Number

### "Valid Thru" Date

The "valid thru" date indicated on the Gift Card is required to ensure that the Gift Card can be used at Merchants that request and/or require customers to provide a plastic expiration date during the transaction process. You may not use the Gift Card after the "valid thru" date. The Available Funds on the Gift Card do not expire, but may be reduced by service fees or other fees as described in these Terms and Conditions. If Available Funds remain on the Gift Card after the "valid thru" date, call the Customer Service Number to obtain a free replacement Gift Card or for instructions on how to redeem the Available Funds. Subject to applicable law, if you ask us to issue you a check for the amount of any Available Funds remaining on the Gift Card after the "valid thru" date, we will deduct a check-issuance fee of $10.00 from the check we send you. Before redeeming any Available Funds, we may hold the Available Funds for 10 business days after you request a check to ensure that all transactions have posted to our system. We reserve the right to decline to issue a replacement Gift Card.

### Lost or Stolen Cards

YOU AGREE TO SAFEGUARD YOUR GIFT CARD AND TREAT IT LIKE CASH. If your Gift Card is lost, stolen or used improperly, contact us immediately at the Customer Service Number — 1-877-AXP-GIFT. You must provide the Gift Card number and other identifying details. We cannot provide a replacement card if you do not have your Gift Card number available. If our records show that there are still Available Funds remaining on the Gift Card, we will cancel the Gift Card and send you a replacement card. Subject to applicable law, when replacing a lost or stolen Gift Card, we will deduct a $5.95 replacement card fee from your Available Funds. The replacement card will be in the amount of Available Funds on your lost/stolen Gift Card at the time you notified us that it was lost/stolen. NO REFUNDS WILL BE PROVIDED FOR AMOUNTS DEBITED FROM YOUR LOST/STOLEN GIFT CARD BEFORE YOU NOTIFY US.

### Using the Card

To use the Gift Card at a Merchant, present the Gift Card at the time of payment and sign the receipt with the same signature you used when you signed the back of the Gift Card. Retain the receipt as a record of the transaction. You agree to use the Gift Card only at Merchants and only for lawful purposes. You authorize us to deduct the full amount of each purchase including taxes and any other fees from the Available Funds whenever your Gift Card is used to make a purchase. You agree to keep track of the Available Funds on your Gift Card by using our website or the Customer Service Number and not to use the Gift Card for any purchase that exceeds the Available Funds. The Gift Card is not transferable and you agree not to permit any other person to use your

Gift Card after it is activated. If you believe your Gift Card has been lost or stolen, you agree to notify us immediately. You acknowledge that purchases made with prepaid cards, such as the Gift Card, are similar to those made with cash or travelers cheques. You cannot "stop payment" or lodge a "billing dispute" on such transactions. Any problems or disputes you may have regarding a purchase should be addressed directly with the Merchant.

## Combining Forms of Payment / "Split Tender" Transactions
If you wish to use your Gift Card to purchase an item for more than the Available Funds, depending on the Merchant's policy, you may be able to use your Gift Card toward a portion of the final purchase price, and then use another form of payment to pay the balance of the final purchase price. This is called a "split tender" transaction because you would be splitting the final transaction amount between your Gift Card and another form of payment. Before you request a "split tender" transaction, please call the Customer Service Number to check your Gift Card's Available Funds balance. Then, you must ask the Merchant if two forms of payment will be accepted for the purchase. If the Merchant agrees, first request that a specific dollar amount be placed on the other form of payment (e.g., the final transaction amount less your Available Funds balance), and then use your Gift Card to pay the remaining balance. Some retailers, particularly department stores, will only allow a "split tender" transaction if the second form of payment is cash or check. Internet and most mail order merchants do not permit "split tender" transactions. We do not guarantee that the Merchant will accept two forms of payment, such as two gift cards.

## Using Your Gift Card at Restaurants and other "Tip" Oriented Merchants
When a restaurant or other "tip" oriented Merchant (e.g., spas, hair salons, etc.) requests approval from us to complete your transaction, the Merchant will often add a fixed percentage (approximately 20%) to the amount reflected on the bill presented to you prior to payment. This additional amount is meant to cover the tip that they expect you will add to the bill. As a result of this increased authorization request, your Gift Card may be declined if you have insufficient Available Funds to cover the amount that the Merchant requested us to approve. If you have more than sufficient Available Funds on your Gift Card to cover the amount that the Merchant requested us to approve, it will result in a "hold" on your Available Funds for the additional amount if you do not add the amount they expect. Once the Merchant sends us the final transaction amount you designate, we will remove the "hold" on your Available Funds for any additional amount exceeding the final transaction amount. This may take 3 to 7 days and during this period you will not be able to use any Available Funds in a "hold" position. As an illustration, if your meal, not including a tip, totaled $50 but the restaurant seeks approval from us for $60 (e.g., includes a $10 tip in the authorization request) and you choose to pay only the $50 for the meal with your Gift Card, leaving the tip in cash, then the additional $10 would be placed on "hold" until we receive a submission from the restaurant reflecting a final transaction amount of $50 on your Gift Card. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, YOU CAN ASK THE MERCHANT TO AUTHORIZE A SPECIFIC DOLLAR AMOUNT. WE DO NOT GUARANTEE THAT THE MERCHANT WILL FULFILL THIS REQUEST.

## Using Your Gift Card at Gasoline Merchants
If you use your Gift Card to purchase gasoline, we recommend that you pay inside, not at the pump. If you pay at the pump, the terminal may be pre-programmed to seek a pre-authorization for $75 and this amount could increase from time to time ("Pre-Authorization Request"). The Pre-Authorization Request seeks to confirm that you have sufficient Available Funds on your Gift Card to pay for an average purchase of gas. If you have insufficient Available Funds on your Gift Card to cover the Pre-Authorization Request, your attempt to use your Gift Card at the pump will be declined. If you have sufficient Available Funds on your

Gift Card to cover the Pre-Authorization Request, you will be permitted to continue your transaction at the pump. However, if the dollar amount of your actual gasoline purchase is less than the amount of the Pre-Authorization Request that we approved, a "hold" on your Available Funds will result equal to the difference between the two amounts. Once the Merchant sends us the final amount of your actual gasoline purchase, we will remove the "hold" on your Available Funds for any additional amount exceeding this final amount. This may take 3 to 7 days and during this period you will not be able to use any Available Funds in a "hold" position. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, WE RECOMMEND THAT YOU PREPAY FOR YOUR GASOLINE INSIDE THE STATION.

## Using Your Gift Card at Lodging Merchants
If a lodging-Merchant accepts gift cards for reservations or at check-in, the Merchant will often seek authorization for the estimated amount of your lodging stay. Your Gift Card may be declined if you have insufficient Available Funds to cover the estimated amount of your lodging stay. If you have more than sufficient Available Funds on your Gift Card to cover the estimated amount that the Merchant requested us to approve, it will result in a "hold" on your Available Funds for the additional amount until the Merchant sends us the final amount of your lodging stay. Once the Merchant sends us the final amount, we will remove the "hold" on your Available Funds for any additional amount we had authorized that exceeded this final amount. While some lodging companies may require use of a credit card to make a reservation, you can use your Gift Card to make final payment at the end of your stay. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, WE RECOMMEND THAT YOU USE AN AMERICAN EXPRESS CHARGE OR CREDIT CARD TO MAKE THE LODGING RESERVATION AND WHEN PROVIDING A FORM OF PAYMENT AT CHECK-IN.

## Transactions in Excess of Available Funds
If you attempt to use the Gift Card when there are insufficient Available Funds for the particular transaction (e.g., $100 purchase when the Gift Card only has $75 in Available Funds), and the Merchant does not fulfill a request to process a "split tender" transaction as described above, the transaction will usually be declined. However, if due to a systems malfunction or for any reason whatsoever, a transaction occurs despite insufficient Available Funds on the Gift Card (creating a negative amount on the Gift Card, referred to herein as a "Shortage"), you agree to reimburse us, upon request, for the amount of the Shortage.

## Returning Merchandise
PLEASE BE AWARE OF THE MERCHANT'S RETURN POLICIES PRIOR TO COMPLETING THE TRANSACTION. If you wish to return any merchandise purchased with the Gift Card, you will be subject to the Merchant's return policies. If the Merchant agrees to issue a credit to the Gift Card, such funds may not be available for 3 to 7 days.

## No Warranty Regarding Goods and Services
We are not responsible or liable to you for the quality, safety, legality, or any other aspect of any goods or services purchased from any Merchant with your Gift Card. If you have a dispute with a Merchant, you agree to settle the dispute directly with the Merchant.

## Refusal of Gift Card
We are not responsible or liable to you if any Merchant refuses to honor the Gift Card or for any other problems you may have with any Merchant. If a Merchant fails to honor the Gift Card, please call the Customer Service Number to report the incident.

## No Warranty of Availability or Uninterrupted Use
From time to time the Gift Card service may be inoperative, and when this happens, you may be unable to use your Gift Card or obtain information about your Available Funds. Please notify us if you have any problems using your Gift Card. You agree that we are not responsible for any interruption of service.

## Special Offers for Gift Card Usage

When you use your Gift Card there may be special offers available from time to time at participating merchants. We reserve the right to add to, change and/or cancel the offers at any time, change and/or terminate the merchants that extend the offers, and condition redemptions on certain requirements (e.g., minimum purchase amount, presentation of coupons or redemptions code at the point-of-sale). Terms, conditions and restrictions of each offer, including but not limited to availability during defined time periods, are described in our communications. We are not responsible or liable to you if a merchant refuses to honor an offer. Please call the participating merchant customer service number to report any such incident.

## Changing these Terms and Conditions / Notices / Gift Card Cancellation

We may change the terms of, or add new terms to, these Terms and Conditions, in any time, with or without cause, and without giving you notice, in accordance with applicable law. In addition, we may suspend, cancel, add, modify or delete any feature offered in connection with your Gift Card at our sole discretion at any time, with or without cause, and without giving you notice, subject to applicable law. Any notice given by us shall be deemed given when deposited in the United States mail, postage prepaid, addressed to you at the latest address shown on our records. If we cancel your Gift Card, any Available Funds remaining on the Gift Card upon such cancellation, after payment for all applicable fees, will be returned to you. If the "valid thru" date on the Gift Card has not expired, we may condition reimbursement upon return of the Gift Card. The Gift Card is our property.

## Assignment and Waiver

We may assign these Terms and Conditions to a third party at any time without notice to you. However, if we assign these Terms and Conditions, the terms will remain substantially and materially the same unless you are notified. In the event we reimburse you for a refund claim you have made for a lost or stolen Gift Card, or if we otherwise provide you with a credit or payment with respect to any problem arising out of any transaction made with the Gift Card, you are automatically deemed to assign and transfer to us any rights and claims, excluding tort claims, that you have, had or may have against any third party for an amount equal to the amount we have paid to you or credited to your Gift Card. You agree that you will not pursue any claim against, or reimbursement from, such third party for the amount that we paid or credited to your Gift Card, and that you will cooperate with us if we decide to pursue the third party for the amount paid or credited. Neither our failure to exercise any of our rights under these Terms and Conditions, nor our delay in enforcing or exercising any of our rights, shall constitute a waiver of such rights. Furthermore, if we waive any right under these Terms and Conditions on one occasion, such waiver shall not operate as a waiver as to any other occasion.

## Data Protection and Privacy

**Information We Collect / Information Security:** We may obtain personal information ("Cardholder Information") about you, including information (i) provided to us by the Gift Card purchaser, such as your name and/or your address, (ii) provided by you at the time of activation or during customer service calls, and (iii) about purchases made with the Gift Card, such as the date, the amount and the place of purchase. For purposes of fraud prevention and regulatory compliance, we may also obtain information from providers of identity verification data and demographic information. Only those persons who need it to perform their job responsibilities are authorized to have access to Cardholder Information. We also maintain physical, electronic, and procedural security measures that comply with federal regulations to safeguard Cardholder Information.

**Disclosure:** We will use Cardholder Information to process Gift Card transactions, to provide customer service, to process claims for lost or

stolen Gift Cards and to help protect against fraud. We may also use Cardholder Information for marketing purposes and to conduct research and analysis. It is often necessary for us to disclose Cardholder Information for the same purposes to companies that work with us. For example, we may provide certain Cardholder Information to companies, including our affiliated companies, that perform business operations or services, including marketing services, on our behalf. We may provide certain Cardholder Information to others outside of American Express as permitted by law, such as to government entities or other third parties in response to subpoenas.

**Offers / Choice:** We may develop marketing programs and send you offers for products and services. We do not share customer addresses with other companies for them to market their own products and services. If you prefer not to receive offers, you may opt out by calling us in the United States toll free at 1-800-722-8614. If you opt out from receiving these offers, we may still send important information about the Gift Card or other American Express products and services to you.

## Telephone Monitoring / Recording

From time to time we may monitor and/or record telephone calls between you and us to assure the quality of our customer service or as required by applicable law.

## Arbitration

**Purpose:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions:** As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Gift Card or these Terms and Conditions as well as any related or prior agreement that you may have had with us or the relationships resulting from any of the above agreements ("Agreements"), including the validity, enforceability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with the Gift Card (including, but not limited to, third parties who accept the Gift Card, third parties who use, provide or participate in programs accessed with the Gift Card, enrollment services and rewards programs, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) your Gift Card; (b) the amount of Available Funds on the Gift Card; (c) advertisements, promotions or oral or written statements related to the Gift Card, goods or services purchased with the Gift Card; (d) any benefits and services related to the Gift Card; and (e) your application for or activation of the Gift Card. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

**Initiation of Arbitration Proceeding / Selection of Administrator:** Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with these Terms and Conditions. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitrator administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows: NAF at P.O. Box 50191, Minneapolis, MN 55404; website: www.arbitration-forum.com; AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

**Significance of Arbitration:** IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration:** IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER GIFT CARDHOLDERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to you and us alone. Furthermore, claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in these Terms and Conditions (including but not limited to the *"Continuation"* provision below) and without waiving either party's right to appeal such decision, should any portion of this *"Restrictions on Arbitration"* provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply.

**Arbitration Procedures:** This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16, as it may be amended ("FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if n is inconsistent with the applicable code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery allowable under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within 15 days of receiving the requesting party's

notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within 20 days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have 30 days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within 120 days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

**Location of Arbitration / Payment of Fees:** Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your residence that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**Continuation:** This Arbitration Provision shall survive termination of your Gift Card as well as voluntary payment in full of any Shortages, any legal proceeding by you or us to collect a debt owe by the other, and any bankruptcy by you or us. Except as otherwise provided in the *"Restrictions on Arbitration"* provision above, if any portion of this Arbitration Provision (other than the *"Restrictions on Arbitration"* provision) is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision, these Terms and Conditions or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

## Applicable Law
These Terms and Conditions and your Gift Card, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of New York, USA (without regard to internal principles of conflicts of law).

The Gift Card is issued by American Express Travel Related Services Company, Inc.

©2006 American Express Travel Related Services Company, Inc.